No. 24-5968

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

RACHEL WELTY, et al.,

Plaintiffs-Appellees,

v.

BRYANT DUNAWAY, et al.,

Defendants-Appellants.

_____

On Appeal from the United States District Court
for the Middle District of Tennessee (No. 3:24-cv-768)
The Honorable Aleta A. Trauger

# BRIEF OF AMICI CURIAE ILLINOIS, ARIZONA, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, DISTRICT OF COLUMBIA, HAWAII, MAINE, MARYLAND, MASSACHUSETTS, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, OREGON, RHODE ISLAND, VERMONT, AND WASHINGTON IN SUPPORT OF PLAINTIFFS-APELLEES

ALEX HEMMER
Deputy Solicitor General
SAMANTHA SHERMAN
Assistant Attorney General
115 S. LaSalle Street
Chicago, Illinois 60603
(312) 814-5526
alex.hemmer@ilag.gov

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

Attorneys for Amici States

*(Additional counsel on signature page)*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ii

IDENTITY AND INTEREST OF AMICI CURIAE ................................. 1

SUMMARY OF THE ARGUMENT ............................................................ 3

ARGUMENT ................................................................................................ 6

    The Court Should Affirm The Injunction Against Chapter 1032... 6

    A.    Amici States have chosen to protect access to abortion care, including abortion care for minors. ......................................... 6

    B.    Tennessee patients have increasingly sought and obtained abortion care in amici States. ............................................... 12

    C.    Chapter 1032 threatens amici States' ability to ensure access to information about lawful abortion services and safe abortion care. ......................................................................... 14

CONCLUSION ......................................................................................... 22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bigelow v. Virginia*,
   421 U.S. 809 (1975) ............................................................ 4, 17

*Dobbs v. Jackson Women's Health Org.*,
   597 U.S. 215 (2022) ............................ 3, 5, 12, 13, 14, 15, 17, 18, 20

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) ................................................................ 2

## CONSTITUTIONAL PROVISIONS

Ariz. Const. art. 2, § 8.1 ............................................................ 7

Cal. Const. art. I § 1.1 .............................................................. 7

Colo. Const. art. II ................................................................. 7

Md. Const. Decl. of Rights art. 48 ................................................ 7

N.Y. Const. art. 1 § 11 ............................................................. 7

Vt. Const. Ch. I, art. 22 ........................................................... 7

## STATUTES, PUBLIC LAWS, AND ORDERS

735 Ill. Comp. Stat. 40/28-11 .................................................... 10

775 Ill. Comp. Stat. 55/1-15 ....................................................... 7

Ariz. Exec. Order 2023-11, Protecting Reproductive Freedom and
   Healthcare in Arizona (June 22, 2023) ....................................... 11

Ariz. Rev. Stat. § 36-2152(H)(1) ................................................. 10

Cal. Penal Code § 13778.3 ........................................................ 11

Colo. Rev. Stat.
    § 13-22-705 .......................................................... 10
    § 24-116-102 ........................................................ 11

Conn. Gen. Stat.
    § 19a-601 ............................................................... 9
    § 19a-602(a) ........................................................... 7

D.C. Mun. Regs. tit. 22-B, § 600.7 ........................... 9

Del. Code Ann. tit. 11, § 2506 ................................. 10

Del. Code Ann. tit. 24, § 1790 ................................... 7

Haw. Rev. Stat.
    § 323J-4 .............................................................. 10
    § 453-16 ................................................................ 7

Mass. Gen. Laws ch. 112
    § 12L ..................................................................... 7
    § 12R .................................................................... 9

Mass. Gen. Laws ch. 147, § 63 ................................ 11

Md. Code Health-Gen. § 20-103 ............................... 10

Md. Code State Pers. & Pens. § 2-312 .................... 11

Me. Stat. tit. 22, § 1597-A ..................................... 7, 9

Minn. Exec. Order No. 22-16, Protecting Access to Reproductive Health
    Care Services in Minnesota (June 25, 2022) ................... 11

Minn. Stat. § 145.409 .............................................. 7

Nev. Rev. Stat.
    § 232.0088 ........................................................... 11
    § 442.250 ............................................................... 7

N.J. Stat. Ann. § 10:7-1 .......................................... 7

N.M. Stat. Ann.

    § 24-34-3 .............................................................. 7

    § 24-35-3 ............................................................ 11

N.Y. C.P.L.R.

    § 3102 ................................................................ 11

    § 3119 ................................................................ 11

N.Y. Crim. Proc. Law

    § 570.17 ............................................................. 11

    § 570.19 ............................................................. 11

    § 140.10 ............................................................. 11

N.Y. Exec. Law

    §837-x ................................................................ 11

N.Y. Pub. Health Law

    § 2599-aa ......................................................... 7, 9

Or. Rev. Stat.

    § 15.430 ............................................................. 11

    § 435.240 ........................................................... 11

    § 435.210 ........................................................... 11

    § 109.640 ............................................................. 9

    § 659.880 ............................................................. 7

R.I. Gen. Laws § 23-4.13-2 ...................................... 7

Tenn. Code Ann.

    § 39-15-201(a) ................................................ 1, 16

    § 39-15-213 ........................................................ 13

Vt. Stat. Ann. tit. 12

    § 7301-7306 ....................................................... 10

Vt. Stat. Ann. tit. 8,

    § 4722 ............................................................... 10

    § 4724 ............................................................... 10

iv

Wash. Rev. Code
  § 7.115.020 .............................................................. 11
  § 9.02.100(2) ............................................................. 7

Youth Health and Safety Act, Ill. Pub. Act. 102-685 (2021) .................... 9

## OTHER AUTHORITIES

*Abortion in the United States Dashboard*, KFF (Dec. 2024),
  ttps://tinyurl.com/29jhx736 ............................................. 12

*Abortion Statistics*, Ill. Dep't of Pub. Health (last accessed Mar. 27,
  2025), https://tinyurl.com/3wds99r2. ............................... 14

Am. Acad. of Pediatrics, Comm. On Adolescence, *Policy Statement: The
  Adolescent's Right to Confidential Care When Considering
  Abortion*, 139 Pediatrics e20163861 (2017) ..................... 8

Barrow, Amanda & Carley Towne, *Shield Laws for Reproductive &
  Gender-Affirming Health Care: A State Law Guide*, UCLA Ctr. on
  Reproductive Health, L. & Pol'y (2025) ........................ 10

Compl. ¶ 44, *Yellowhammer Fund v. Att'y Gen. of Ala.*, No. 23-cv-00450
  (M.D. Ala. July 7, 2023) .................................... 19

English, Abigail & Rebecca Gudeman, *Minor Consent and
  Confidentiality: A Compendium of State and Federal Laws*, Nat'l
  Ctr. For Youth L. (2024) .................................... 9

*Hearing on HB1895 before the Population Health Subcomm.*, 113th
  Gen. Assembly (Tenn. Feb. 13, 2024) (statement of Rep. Jason
  Zachary), https://tinyurl.com/2wvprdsa ...................... 17

Kirchgaessner, Stephanie, *US Doctors Describe Three Patient Deaths
  That Could Have Been Prevented With Abortion Access In New
  Study*, The Guardian (Apr. 3, 2025), https://tinyurl.com/5xppwtbx
  ....................................................... 21

*Massachusetts Induced Termination of Pregnancy 2023*, Mass. Dep't of
  Pub. Health (Nov. 2024), https://tinyurl.com/2s43d8pb ............... 14

Moon, Margaret, *Adolescents' Right to Consent to Reproductive Medical Care: Balancing Respect for Families with Public Health Goals*, 12 Am. Med. Ass'n J. of Ethics 805 (2012) ........................................... 8

Mulvihill, Geoff, *Funds Are Cutting Aid For Women Seeking Abortions As Costs Rise*, Associated Press (Sept. 25, 2024), https://tinyurl.com/2ya2xbrd. ....................................................... 15

Nandi, Preetha et al., *Navigating Miscarriage Management Post-*Dobbs*: Health Risks and Ethical Dilemmas,* 34 Women's Health Issues 449 (2024) ...................................................................................... 21

National Academies of Sciences, Engineering, and Medicine, *The Safety and Quality of Abortion Care in the United States* (2018) ............ 21

*New Data Show That Interstate Travel for Abortion Care in the United States has Doubled Since 2020*, Guttmacher Inst. (Dec. 7, 2023), https://tinyurl.com/6b9zevsu ................................................ 12, 13, 14

*Planned Parenthood of Illinois' Abortion Patients Increase 54% One Year After Supreme Court Overturned* Roe v. Wade, Planned Parenthood of Illinois (June 14, 2023), https://tinyurl.com/bdhf5zwy. .................................................. 15, 20

Raymond, Elizabeth G. & David E. Grimes, *The Comparative Safety of Legal Induced Abortion and Childbirth in the United States*, 119 Obstetrics & Gynecology 215 (2012) ............................................... 21

Shapiro, Nina, *She Secretly Traveled 2,000 Miles for Her WA Abortion. Why Patients from the South Are Coming Here*, The Seattle Times (Feb. 26, 2023), https://tinyurl.com/bdcn9v9f. .............................. 21

Simmons-Duffin, Selena, *3 Abortion Bans in Texas Leave Doctors 'Talking in Code' to Pregnant Patients*, NPR (Mar. 1, 2023), https://tinyurl.com/m2ucw9yz ....................................................... 18

Soc'y of Fam. Plan., *#WeCount Report, April 2022 to June 2023* 10 (Oct. 24, 2023), https://tinyurl.com/54ybk7vu ........................................ 12

Soc'y of Fam. Plan., *#WeCount Report, April 2022 to December 2023* 5 (May 14, 2024), https://tinyurl.com/3upshwc5 ............................... 12

U.S. Senator Maria Cantwell, *SNAPSHOT: Abortion Care in the State of Washington One Year Post Dobbs*, Press Release (June 23, 2023), https://tinyurl.com/5x428bwv ............................................. 20

Varney, Sarah, *Groups Sue to Overturn Idaho 'Abortion Trafficking' Law Targeting Teens*, KFF Health News (July 11, 2023), https://tinyurl.com/vkbhyrup ........................................................ 18

Washburn, Kaitlin, *Illinois Planned Parenthood Clinics See Uptick in Southerners Seeking Abortions Since Overturning of Roe*, Chi. Sun-Times (June 11, 2024), https://tinyurl.com/u3pftdtf ............. 13

## IDENTITY AND INTEREST OF AMICI CURIAE

Illinois, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Maine, Maryland, Massachusetts, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, and Washington ("amici States") submit this brief in support of Plaintiffs-Appellees pursuant to Federal Rule of Appellate Procedure 29(a)(2).

In April 2024, the Tennessee General Assembly passed—and the Governor signed into law—a statute ("Chapter 1032") that endangers broad swaths of speech about reproductive healthcare that is legal within amici States. Specifically, Chapter 1032 purports to impose criminal and civil penalties on anyone who, as relevant here, "recruits" a minor within Tennessee for the purpose of "[p]rocuring an act that would constitute a criminal abortion" under Tennessee law, "regardless of where the abortion is to be procured." Tenn. Code Ann. § 39-15-201(a)(2). Chapter 1032 also prohibits recruiting a minor for the purpose of "[o]btaining an abortion-inducing drug . . . regardless of where the abortion-inducing drug is obtained." *Id.* § 39-15-201(a)(3). Plaintiffs, who are advocates for access to abortion care, filed this suit

alleging that Chapter 1032's ban on "recruit[ing]" a minor for the purpose of obtaining abortion care in other States is unconstitutional because it is vague, overbroad, and violates the First Amendment. Mem., R.40, 548-549.[1] The district court granted plaintiffs' motion for a preliminary injunction, concluding that they had established a likelihood of success on the merits on all of their claims.

Amici States have important sovereign interests in preserving their authority to regulate public health within their borders. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003). These interests include ensuring that abortion care lawfully provided in their States is safe and effective for all who seek it. These interests also include protecting the right of amici State residents—medical providers and lay advisors alike—to counsel and assist patients in accessing such care. Amici States accordingly have a substantial interest in preventing the grave uncertainties caused by Tennessee's law that will chill the free flow of information and threaten access to safe and effective abortion care within their borders.

---

[1] All record pincites refer to the "Page ID" numbers in the ECF file stamps for the district court's docket, No. 3:24-cv-768.

## SUMMARY OF THE ARGUMENT

Chapter 1032 threatens to punish, and will chill, the free flow of information from medical providers, counselors, advocates, and other trusted adults in amici States to their Tennessee patients, clients, relatives, and friends. After the Supreme Court declined to recognize a constitutional right to abortion in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), the States have exercised their authority to regulate abortion in varied ways. Amici States have chosen to protect abortion care within their borders. Other States, like Tennessee, have restricted abortion in almost all circumstances. But, as research shows, abortion bans do not reduce the number of abortions; rather, they push individuals to find other ways of accessing the care they are seeking.[2] As a result, many amici States have received a surge of out-of-state patients, including patients from Tennessee, seeking reproductive care that they cannot access in their home states. These patients include minors, who in many amici States have the ability to independently consent to abortion care without parental involvement,

_____

[2] *See, e.g.*, *Key Facts: Abortion*, World Health Org. (Mar. 17, 2024) ("Evidence shows that restricting access to abortions does not reduce the number of abortions[.]").

particularly in situations of abuse and neglect. Amici States have welcomed patients regardless of their home state, but the influx of Tennessee patients seeking care in many amici States means that Chapter 1032 poses a substantial risk to amici State residents, their ability to counsel these patients, and the provision of care in amici States.

The district court preliminarily enjoined enforcement of Chapter 1032's "recruitment" provision, and this Court should affirm. The Supreme Court has long recognized that a State has no authority to prevent its residents from accessing abortion care in other States where it is legal—much less from accessing and sharing information about such care. *See Bigelow v. Virginia*, 421 U.S. 809, 824-25 (1975) (holding, in the context of advertising out-of-state abortion services, that a State cannot "bar a citizen of another State from disseminating information about an activity that is legal in that State," even if it does so "under the guise of exercising internal police powers"). Consistent with this precedent, the district court correctly concluded that plaintiffs were likely to succeed on their claims that Tennessee's law unconstitutionally seeks "to outlaw certain communications made in the

furtherance of abortions that are, in fact, entirely legal." Mem., R.40, 540.

If the preliminary injunction is vacated, significant harm will result. Minors who, for myriad possible reasons, cannot confide in a parent or guardian face significant legal, financial, and logistical barriers to accessing reproductive healthcare. These young people understandably turn to trusted organizations and individuals—including those in amici States—to help them navigate the challenges they face. But experience shows that these trusted individuals and organizations may choose to significantly limit their communications, or even to not speak at all, when threatened with harsh civil and criminal liability under laws like Tennessee's. This can result in delays in patients' ability to access care, leading to increased health risks, lifelong complications, and death. Tennessee may, consistent with *Dobbs*, restrict access to abortion within its State, but all Americans have the right to freely share and receive information, ideas, and opinions regarding legal abortion access. Amici States respectfully request that this Court affirm the district court's order granting the preliminary injunction.

## ARGUMENT

Amici States agree with plaintiffs that Chapter 1032 is unlawful. Amici States write separately to emphasize their sovereign interest in protecting access to safe and legal abortion care within their States and preserving the free flow of information about that lawful care. Many amici States receive significant numbers of out-of-state patients seeking abortion care, and Tennessee's law will substantially threaten both the ability of amici States' residents to offer information and counseling across state lines and amici States' broader interest in ensuring safe and effective abortion care within their borders. The Court should affirm the injunction.

### The Court Should Affirm The Injunction Against Chapter 1032.

#### A. Amici States have chosen to protect access to abortion care, including abortion care for minors.

Amici States do not challenge Tennessee's ability to make sovereign decisions regarding abortion within its borders, to the degree consistent with federal and state constitutional limitations. Likewise, amici States may exercise their police powers over public health policy within their own borders. Consistent with this authority, amici States have chosen to preserve access to abortion care within their States.

Although regulations differ from state to state, all amici States permit abortion care that would be illegal in Tennessee.  In Illinois, for example, the Reproductive Health Act protects the right to receive abortion care, recognizing that "every individual has a fundamental right to make autonomous decisions about the individual's own reproductive health."  775 Ill. Comp. Stat. 55/1-15.  Connecticut, Delaware, Hawaii, Maine, Massachusetts, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon, Rhode Island, and Washington likewise have enacted statutes that protect abortion access.[3]  Recently, voters in many amici States, including Arizona, California, Colorado, Maryland, and Vermont, have chosen to amend their constitutions to expressly guarantee the right to access abortion care.[4]  California's Constitution, for example, explains that "[t]he state shall not deny or

---

[3] *See* Conn. Gen. Stat. § 19a-602(a); Del. Code Ann. tit. 24, § 1790; Haw. Rev. Stat. § 453-16; Mass. Gen. Laws ch. 112, § 12L; Me. Stat. tit. 22, § 1597-A; Minn. Stat. § 145.409; Nev. Rev. Stat. § 442.250; N.J. Stat. Ann. § 10:7-1; N.M. Stat. Ann. § 24-34-3; N.Y. Pub. Health Law § 2599-aa(2); Or. Rev. Stat. § 659.880; R.I. Gen. Laws § 23-4.13-2; Wash. Rev. Code § 9.02.100(2).

[4] Ariz. Const. art. 2, § 8.1; Cal. Const. art. I § 1.1; Colo. Const. art. II, 32; Md. Const. Decl. of Rights art. 48; Vt. Const. ch. I, art. 22; *see also* N.Y. Const. art. 1 § 11.

interfere with an individual's reproductive freedom in their most intimate decisions, which includes their fundamental right to choose to have an abortion."  Cal. Const. art. I § 1.1.

Recognizing that these constitutional and statutory rights extend to minors, many amici States allow some or all minors to independently consent to abortion care.  Unfortunately, not all young people have the support of "capable parents."[5]  One study found that one third of minors who choose not to inform their parents about their reproductive healthcare decisions "already have experienced family violence and fear it will recur."[6]  The American Academy of Pediatrics has explained that "risks of violence, abuse, coercion, unresolved conflict, and rejection are significant in unsupportive or dysfunctional families when parents are informed of a pregnancy against the adolescent's considered

---

[5]  Margaret Moon, *Adolescents' Right to Consent to Reproductive Medical Care: Balancing Respect for Families with Public Health Goals*, 12 Am. Med. Ass'n J. of Ethics 805, 806 (2012).

[6]  Am. Acad. of Pediatrics, Comm. On Adolescence, *Policy Statement: The Adolescent's Right to Confidential Care When Considering Abortion*, 139 Pediatrics e20163861, at 8 (2017) (citing Stanley K. Henshaw & Kathryn Kost, *Parental Involvement in Minors' Abortion Decisions*, 24 Fam. Planning Perspectives 196 (1992)).

judgment."[7]  For these reasons, Illinois does not require minors to notify or obtain the consent of their parents in order to exercise their right to receive an abortion.  *See* Youth Health and Safety Act, Ill. Pub. Act. 102-685 (2021) (repealing prior statute requiring parental notification). Other amici States, including California, Connecticut, the District of Columbia, Hawaii, Maine, New York, Washington, and Vermont, likewise permit minors to independently consent to abortion care without parental involvement.[8]  Still other amici States require parental involvement only for minors below a certain age.  In Massachusetts, for instance, parental consent is not required for minors who are at least 16 years old, and in Oregon, parental consent is not required for minors who are at least 15.[9]  And even many amici States that have retained age-based restrictions still permit minors to make certain reproductive healthcare decisions without parental involvement.

---

[7]  *Id.* at 4.

[8]  *See, e.g.*, Conn. Gen. Stat. § 19a-601; D.C. Mun. Regs. tit. 22-B, § 600.7;  Me. Stat. tit. 22, § 1597-A(2)(B); N.Y. Pub. Health Law § 2599-aa; Abigail English & Rebecca Gudeman, *Minor Consent and Confidentiality: A Compendium of State and Federal Laws*, Nat'l Ctr. For Youth L. (2024) (fifty-state survey of abortion parental involvement requirements for minors).

[9]  Mass. Gen. Laws ch. 112, § 12R; Or. Rev. Stat. § 109.640.

In Colorado, Maryland, and Oregon, for example, a minor need not notify or seek the consent of her parents when doing so could put her at risk of physical or emotional abuse.[10]

Many amici States have also attempted to further safeguard abortion access within their borders by enacting "shield laws" to protect those who are lawfully providing or accessing abortion care within amici States from facing civil and criminal liability under other States' anti-abortion laws.[11]  In Illinois, for example, state agencies and officials cannot assist out-of-state individuals or entities seeking to impose civil or criminal liability for providing, supporting, or receiving abortion care that is legal in Illinois.[12]  Other amici States have enacted similar laws, which have been particularly important for States neighboring those with restrictive abortion bans.[13]  California, Nevada, Oregon, and

---

[10]  Colo. Rev.  Stat. § 13-22-705; Md. Code. Health-Gen. § 20-103; Or. Rev. Stat. § 109.640(2)(b); *see also, e.g.*, Ariz. Rev. Stat. § 36-2152(H)(1).

[11]  Amanda Barrow & Carley Towne, *Shield Laws for Reproductive & Gender-Affirming Health Care: A State Law Guide*, UCLA Ctr. on Reproductive Health, L. & Pol'y (2025).

[12]  735 Ill. Comp. Stat. 40/28-11.

[13]  *See, e.g.*, Del. Code Ann. tit 11, § 2506; Haw. Rev. Stat. § 323J-4; Vt. Stat. Ann. tit. 12, §§ 7301-7306, tit. 8, §§ 4722, 4724; Mass. Gen. Laws

Washington, for instance—where providers frequently treat patients subject to Idaho's abortion ban—have enacted shield laws that prohibit cooperation with investigations initiated under other States' anti-abortion laws.[14] And Arizona, Colorado, and New Mexico—where providers treat many patients subject to Texas's abortion ban—have implemented similar protections.[15]

In sum, although amici States' laws with respect to abortion care vary, all have chosen to preserve access to abortion care within their borders, including access for some or all minors, regardless of the patients' residence. And many amici States have additionally chosen to safeguard that access by enacting shield laws that protect those who are lawfully providing or accessing abortion care within their States.

---

ch. 147, § 63; Md. Code State Pers. & Pens. § 2-312; Minn. Exec. Order No. 22-16, Protecting Access to Reproductive Health Care Services in Minnesota (June 25, 2022); N.Y. Exec. Law §837-x; N.Y. Crim. Proc. Law §§ 570.17, 570.19, 140.10(3-a), (3-b); N.Y. C.P.L.R. §§ 3102, 3119.

[14] *See, e.g.*, Cal. Penal Code § 13778.3; Nev. Rev. Stat. § 232.0088; Or. Rev. Stat. §§ 15.430, 435.240, 435.210; Wash. Rev. Code §§ 7.115.020(1), (2)(b).

[15] *See, e.g.*, Ariz. Exec. Order 2023-11, Protecting Reproductive Freedom and Healthcare in Arizona (June 22, 2023); Colo. Rev. Stat. § 12-30-121; N.M. Stat. Ann. §§ 24-35-3.

**B.    Tennessee patients have increasingly sought and obtained abortion care in amici States.**

In the wake of the Supreme Court's opinion in *Dobbs*, numerous States—including Tennessee—enacted laws banning most or all abortion care within their borders.[16]  As a result, many amici States have seen surges in the number of out-of-state patients, including minors, seeking legal abortion care within their borders.  Interstate travel for abortion care in the United States has nearly doubled since 2020.[17]  And, unsurprisingly, States located near States with abortion bans have seen the greatest increases in out-of-state patients.[18]

---

[16] *See, e.g.*, *Abortion in the United States Dashboard*, KFF (Dec. 2024), https://www.kff.org/womens-health-policy/dashboard/abortion-in-the-u-s-dashboard/.

[17] *New Data Show That Interstate Travel for Abortion Care in the United States has Doubled Since 2020*, Guttmacher Inst. (Dec. 7, 2023), https://tinyurl.com/6b9zevsu.

[18] Soc'y of Fam. Plan., *#WeCount Report, April 2022 to June 2023* 10 (Oct. 24, 2023), https://tinyurl.com/54ybk7vu ("We observed greater increases in states close to states with bans, even if those receiving states had abortion restrictions such as mandated in-person counseling and waiting periods."); Soc'y of Fam. Plan., *#WeCount Report, April 2022 to December 2023* 5 (May 14, 2024), https://tinyurl.com/3upshwc5 (reporting that most "surge states"—defined as states with the largest cumulative increases in abortion volume—"bordered states with abortion bans").

Tennessee's abortion laws are particularly restrictive, banning abortion at any stage of pregnancy, with only a few narrowly drawn exceptions. *See* Tenn. Code Ann. § 39-15-213. There are no exceptions for victims of rape or incest. As a result, over 10,000 Tennesseans traveled out of state for an abortion in 2023.[19] And because many of Tennessee's neighboring States also heavily restrict abortion access, many patients travel long distances to seek care in amici States.

Most patients traveling from Tennessee for abortion care are treated in Illinois. In the aftermath of *Dobbs*, Planned Parenthood clinics in Illinois reported receiving a "flood" of out-of-state patients in search of abortion care, with the biggest increase in patients from Tennessee and Kentucky.[20] This included a steep increase in the number of minors seeking abortions. According to Illinois Department of Health statistics, the number of minors who received abortion care in Illinois increased by approximately 70% in the aftermath of *Dobbs*, from

[19] Guttmacher Inst., *supra* note 17.

[20] Kaitlin Washburn, *Illinois Planned Parenthood Clinics See Uptick in Southerners Seeking Abortions Since Overturning of Roe*, Chi. Sun-Times (June 11, 2024), https://tinyurl.com/u3pftdtf.

1,297 minors in 2021 to 2,224 minors in 2023.[21]  California has likewise

seen a substantial increase in patients from Tennessee seeking abortion

care.[22]  Even providers in Massachusetts have reported receiving more

patients from Tennessee and other southeastern States with restrictive

abortion laws.[23]  These dynamics are hardly unique to Tennessee;

indeed, in the wake of *Dobbs*, many seeking abortion care are required

to do so out of State, which in turn increases the need for amici States

to provide care and to support those who do.

C.     **Chapter 1032 threatens amici States' ability to ensure access to information about lawful abortion services and safe abortion care.**

If Chapter 1032 is not enjoined, it will threaten amici States'

interests in multiple respects.  First, it will interfere with amici States'

ability to ensure that providers and other individuals who provide

counseling and information to those seeking abortion care in their

States can continue to do so.  Second, it will impair amici States'

---

[21] *Abortion Statistics*, Ill. Dep't of Pub. Health (last accessed Mar. 27, 2025), https://tinyurl.com/3wds99r2.

[22] Guttmacher Inst., *supra* note 17.

[23] *Massachusetts Induced Termination of Pregnancy 2023*, Mass. Dep't of Pub. Health (Nov. 2024), https://tinyurl.com/2s43d8pb.

broader interest in ensuring that those who seek abortion care within their States are able to obtain it safely.

First, Chapter 1032 threatens the ability of amici State residents to freely share information about lawful abortion care. Navigating state abortion laws, especially in States that have recently enacted prohibitions on abortion care, is challenging, time-consuming, and often costly. As a result, more and more individuals are turning to helplines, abortion funds, and other forms of assistance to secure abortion care. For example, data from Illinois suggests that, in the wake of *Dobbs* and the increase in restrictive abortion laws throughout the country, more than double the number of patients need financial assistance or travel support in order to access abortion care.[24] These trends are not limited to Illinois; abortion funds across the country have reported significant increases in financial need, particularly for travel assistance.[25] As a result, providers and other individuals who provide counseling and

---

[24] *Planned Parenthood of Illinois' Abortion Patients Increase 54% One Year After Supreme Court Overturned* Roe v. Wade, Planned Parenthood of Illinois (June 14, 2023), https://tinyurl.com/bdhf5zwy.

[25] Geoff Mulvihill, *Funds Are Cutting Aid For Women Seeking Abortions As Costs Rise*, Associated Press (Sept. 25, 2024), https://tinyurl.com/2ya2xbrd.

information play a critical role in ensuring that those seeking abortion care, including minors, obtain the guidance and support they need.

Tennessee's law threatens the ability of providers and other individuals to provide information about medical care that is lawfully available in amici States. Tennessee has purported to make it a criminal act to "recruit" a minor for the purpose of receiving an abortion "regardless of where the abortion is to be procured" or "where the abortion-inducing drug is obtained." Tenn. Code Ann. § 39-15-201(a). But that prohibition could sweep in a wide range of conduct by providers and other individuals in amici States who interact with individuals in Tennessee, from explaining the services available in a clinic to providing information about financial or other assistance for travel. As the district court explained, "[n]o one associated with [the Tennessee statute] seems to have a particularly clear picture of what the provision is supposed to prohibit—not the prosecutors who will be called on to enforce it; not the state attorneys called on to defend the statute in court; and, it seems, not even the individuals who drafted the provision itself." Mem., R.40, 561. Indeed, when the bill's sponsor was asked about the meaning of the term "recruit" during a legislative

hearing, he remarked that it could "include just about anything," and it would be up to "the courts" to place limits on its scope.[26] The sponsor likewise refused to directly answer questions whether the host of a website with information about States in which abortion is legal could be liable for criminal penalties if a Tennessee minor accessed the website.[27]

The provision of information about lawful services in amici States, including abortion care, is constitutionally protected. A State cannot restrict the right to travel to another State, including to obtain abortion care. *See Bigelow*, 412 U.S. at 824; *Dobbs*, 597 U.S. at 346 (Kavanaugh, J., concurring) (A State cannot bar its residents from "traveling to another State to obtain an abortion."). And because traveling outside of Tennessee for the purpose of obtaining an abortion is legal, so too is disseminating information about such travel. Indeed, the Supreme Court held exactly that in *Bigelow*, reasoning that a State cannot "bar a citizen of another State from disseminating information about an

---

[26] *Hearing on HB1895 before the Population Health Subcomm.*, 113th Gen. Assembly, at 13:40 (Tenn. Feb. 13, 2024) (statement of Rep. Jason Zachary), https://tinyurl.com/2wvprdsa.

[27] *Id.* at 18:15.

activity that is legal in that State," even if it does so "under the guise of exercising internal police powers." 412 U.S. at 824-25.

Chapter 1032 thus unconstitutionally restricts the flow of information about lawful abortion care that amici States have taken affirmative steps to protect. Amici States' concerns about the law's effect are not hypothetical, as their post-*Dobbs* experience readily demonstrates. For instance, after Idaho's similarly worded "abortion trafficking" prohibition was enacted in 2023, advocates working in domestic violence shelters reported confusion "about what information they can and cannot give without putting themselves in legal jeopardy."[28] As another example, Texas's prohibition on "aiding and abetting" abortion has chilled doctors from referring patients for care in other States where abortion is legal—or even counseling them about their options—including in cases involving serious medical complications.[29] And, after Alabama officials suggested that their

---

[28] Sarah Varney, *Groups Sue to Overturn Idaho 'Abortion Trafficking' Law Targeting Teens*, KFF Health News (July 11, 2023), https://tinyurl.com/vkbhyrup.

[29] *See, e.g.*, Selena Simmons-Duffin, *3 Abortion Bans in Texas Leave Doctors 'Talking in Code' to Pregnant Patients*, NPR (Mar. 1, 2023), https://tinyurl.com/m2ucw9yz.

State's conspiracy laws might be used to prosecute anyone who helps

someone obtain an out-of-state abortion, a reproductive justice nonprofit

"temporarily stopped sharing information about lawful out-of-state

abortion" out of fear that it would "face criminal prosecution for helping

pregnant Alabamians travel out of state for abortions."[30]  Chapter 1032

threatens to impose all of these costs on the residents of amici States

who wish to counsel pregnant individuals in Tennessee about access to

legal abortion care.

Second, Chapter 1032 will also impair amici States' ability to

ensure access to safe and effective abortion care, including for minors,

within their jurisdictions.  If providers and other residents of amici

States are not able to counsel individuals within Tennessee about their

ability to obtain legal abortion care, those individuals—and especially

minors—will face increased barriers to accessing safe care.  Without

such support, minors who cannot confide in their parents will be left to

navigate the various financial, legal, and logistical barriers to abortion

access on their own.  That, in turn, will increase the medical risks

---

[30] Compl. ¶ 44, *Yellowhammer Fund v. Att'y Gen. of Ala.*, No. 23-cv-00450 (M.D. Ala. July 7, 2023).

associated with abortion care, affecting not only these patients but also healthcare providers in amici States who endeavor to provide high-quality, safe, and effective care.

Abortion care is safe and effective as a general rule, but the increase in restrictive statutes like Tennessee's has increased the risks associated with such care. For instance, many providers have observed that patients seeking abortions after *Dobbs* are, on average, at a higher gestational age in their pregnancies when they ultimately receive abortion care. As one example, Planned Parenthood of Illinois reported that abortions over 16 weeks of gestational age made up 13% of all procedural abortions in 2023, compared to 8% before *Dobbs*.[31] Other amici States also have experienced these effects. University of Washington doctors have reported that, since *Dobbs*, they have seen an increase in the gestational ages at which patients first come to see them to obtain abortion care.[32] The medical director for Cedar River Clinics

---

[31] *Planned Parenthood of Illinois*, *supra* note 24.

[32] U.S. Senator Maria Cantwell, *SNAPSHOT: Abortion Care in the State of Washington One Year Post Dobbs*, Press Release (June 23, 2023), https://tinyurl.com/5x428bwv.

in Washington has said the same: "Patients are further along in their pregnancies when they come to see us."[33]

Although abortion is safe at virtually any stage—and, without question, far safer than carrying a pregnancy to term—delays in receiving abortion care make treatment more complex, increasing the risks for the patient and the duration of the procedure.[34] In addition, many pregnancy and miscarriage complications require time-sensitive treatment, including abortion care, to stabilize emergency conditions. In these urgent circumstances, delay can put a patient's life or health at risk.[35] By hampering the flow of information about lawful abortion

---

[33] Nina Shapiro, *She Secretly Traveled 2,000 Miles for Her WA Abortion. Why Patients from the South Are Coming Here*, The Seattle Times (Feb. 26, 2023), https://tinyurl.com/bdcn9v9f.

[34] Elizabeth G. Raymond & David E. Grimes, *The Comparative Safety of Legal Induced Abortion and Childbirth in the United States*, 119 Obstetrics & Gynecology 215, 215 (2012) (concluding the risk of death associated with childbirth is approximately 14 times higher than that with abortion); National Academies of Sciences, Engineering, and Medicine, *The Safety and Quality of Abortion Care in the United States* 12, 77-78 (2018), https://tinyurl.com/bderbu4e.

[35] *See, e.g.*, Preetha Nandi et al., *Navigating Miscarriage Management Post-Dobbs: Health Risks and Ethical Dilemmas,* 34 Women's Health Issues 449 (2024); Stephanie Kirchgaessner, *US Doctors Describe Three Patient Deaths That Could Have Been Prevented With Abortion Access In New Study*, The Guardian (Apr. 3, 2025), https://tinyurl.com/5xppwtbx.

care, Chapter 1032 increases the risks associated with such care, thus impairing amici States' commitment to ensuring that safe and effective abortion care is available within their own borders.

* * *

At bottom, Tennessee is entitled to make choices that differ from amici States' own as to whether its residents are able to access legal abortion care within that State. But it is not entitled to threaten amici States' own residents' ability to provide counseling and information about legal abortion care.

## CONCLUSION

This Court should affirm the district court's order.

Respectfully submitted,

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

/s/ Alex Hemmer
ALEX HEMMER
Deputy Solicitor General
SAMANTHA SHERMAN
Assistant Attorney General
115 South LaSalle Street

Chicago, Illinois 60603
(312) 814-5526
alex.hemmer@ilag.gov

KRIS MAYES
*Attorney General*
*State of Arizona*
2005 N. Central Avenue
Phoenix, AZ 85004

ROB BONTA
*Attorney General*
*State of California*
1300 I Street
Sacramento, CA 95814

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway
Denver, CO 80203

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

BRIAN L. SCHWALB
*Attorney General*
*District of Columbia*
400 6th Street NW, Suite 8100
Washington, DC 20001

ANNE E. LOPEZ
*Attorney General*
*State of Hawai'i*
425 Queen Street
Honolulu, HI 96813

AARON M. FREY
*Attorney General*
*State of Maine*
6 State House Station
Augusta, ME 0433

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

ANDREA JOY CAMPBELL
*Attorney General*
*Commonwealth of*
  *Massachusetts*
One Ashburton Place
Boston, MA 02108

KEITH ELLISON
*Attorney General*
*State of Minnesota*

AARON D. FORD
*Attorney General*
*State of Nevada*

102 State Capitol
75 Rev. Dr. MLK Jr. Blvd.
St. Paul, MN 55155

MATTHEW J. PLATKIN
*Attorney General*
*State of New Jersey*
25 Market Street
Trenton, NJ 08625

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Maine Street
Providence, RI 02903

NICHOLAS W. BROWN
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

April 11, 2025

100 North Carson Street
Carson City, NV 89701

RAÚL TORREZ
*Attorney General*
*State of New Mexico*
201 3rd Street NW
Albuquerque, NM 87109

DAN RAYFIELD
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a)(5) because it contains 4,257 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirement of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word.

/s/ Alex Hemmer
ALEX HEMMER

April 11, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2025, I electronically filed the foregoing Brief of Amici Curiae Illinois et al. with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Alex Hemmer
ALEX HEMMER